J. C. ROWLEY v. JOHN CONKLIN and Others.[1]

May 1, 1903.

Nos. 13,391—(47).

### Logging Lien—Indian Reservation.

In an action to foreclose a laborer's lien, claimed under the provisions of Laws 1899, p. 432 (c. 342), for labor performed in cutting and banking certain pine logs on the White Earth Indian Reservation under contract with a representative of the general government, it is *held* that at the time the labor of cutting and banking such logs was performed the same belonged to the government of the United States, and no lien could attach thereto; defendants acquired title to the logs subsequent to the performance of such labor, and received the same free and clear of plaintiff's asserted lien.

Appeal by defendant Commonwealth Lumber Company from an order of the district court for Becker county, Baxter, J., denying a motion for a new trial. Reversed.

*C. M. Johnson* and *Wm. A. Lancaster*, for appellant.

By the treaty of February 24, 1855, the lands now embraced within the limits of the White Earth Indian reservation became public lands of the United States, and every right of the Indians therein became absolutely extinguished. Selkirk v. Stephens, 72 Minn. 335; U. S. v. Pine River Logging Co., 89 Fed. 907.

[1] Reported in 94 N. W. 548.

The lands being the property of the United States, of course the timber standing upon them was likewise the property of the United States. Until the logs were sold to the Commonwealth Lumber Company they belonged either to the United States or to the Chippewa Indians, and, in consequence, no lien could attach to them by virtue of Laws 1899, c. 342, under which these proceedings were brought, or indeed by virtue of any state law. As the property of the Indians cannot be taxed, nor sold under execution, by the state, it certainly cannot be subjected to a state lien law. Selkirk v. Stephens, supra; State v. Campbell, 53 Minn. 354; Kansas Indians, 5 Wall. 737; U. S. v. Shanks, 15 Minn. 302 (369); State v. Cooney, 77 Minn. 518; Bem-way-bin-ness v. Eshelby, 87 Minn. 108.

*A. G. Wedge,* for respondent. .

Appellant's contract with the Indian agent for the purchase of the timber constituted an absolute sale of the logs, giving the buyer a defeasible interest which would be subject to attachment by creditors or a lien for labor. Story, Sales, §§ 281–284; Tiffany, Sales, 89–91. All the parties to the action were and are citizens of Minnesota and subject to the laws both on and off the White Earth reservation. Selkirk v. Stephens, 72 Minn. 335; Hankey v. Bowman, 82 Minn. 328. The doctrine laid down in Citizens State Bank v. Bonnes, 83 Minn. 1, is applicable to the case at bar.

BROWN, J.

Action, under Laws 1899, c. 342, to foreclose a laborer's lien. After trial before the court without a jury, plaintiff had judgment, and defendant the Commonwealth Lumber Company appealed from an order denying a new trial.

The trial court found generally that the allegations of the complaint were true, and to that we look for the facts on which plaintiff bases his cause of action. The complaint alleges that in the month of January, 1901, the copartnership of Conklin, Hardman & Broker was duly authorized to enter upon the White Earth Indian Reservation, in the state of Minnesota, and to cut and remove therefrom certain classes of pine timber and pine logs, and to do any and all kinds of manual labor connected with cutting or bank-

ing such logs; that on January 2, 1901, plaintiff entered into a contract with that firm whereby, for the consideration of $35 per month, he agreed to perform labor for said firm in and about cutting, hauling, and banking said logs, under which contract he performed labor in that behalf, and earned the sum of $80.40, no part of which has ever been paid, except the sum of $40. Then follow allegations of the steps taken by him to perfect a lien upon the logs cut, hauled, and banked for that firm. The complaint further alleges that defendant lumber company is, as plaintiff is informed and believes, the owner of said logs, and judgment is demanded for a specific lien thereon to the extent of the unpaid value of his labor. There is no allegation in the complaint, nor any finding of fact, that the lumber company owned the logs at the time they were cut by Conklin, Hardman & Broker, or that it was in any way connected with that firm, or concerned in or responsible for the performance of the contract under which they cut and banked them. The allegation of the complaint in respect to the ownership of the lumber company is in the present tense—to the effect that the company owned the logs at the time of the commencement of the action, July, 1901.

We are controlled in deciding the case by the facts set forth in the complaint, the substance of which we have recited, and the question presented is whether a cause of action is there disclosed. We are required to take notice of the fact that the White Earth Indian Reservation, situated in this state, belongs to the general government; the title to the land embraced therein is in the United States, as well as the title to all timber standing or growing thereon. We also take notice of the fact that all timber on such reservation is sold and disposed of by the general government for the exclusive benefit of the Indians, and that no part thereof is authorized to be sold or disposed of for any other purpose. With these matters in view, we must assume that Conklin, Hardman & Broker entered upon the reservation to cut and remove the logs in question under some contract with the government authorities, and for and in behalf of the government, for authority to do so could not otherwise be obtained. It does not appear that they were purchasers or had title to any of the logs cut by them, and

the inference is that they were being cut for, and that the title thereto remained in, the government, until thereafter sold to defendant lumber company.

Plaintiff's claim of lien is based upon the provisions of Laws 1899, p. 432 (c. 342), of this state, which would clearly sustain his position if the logs on which he bestowed his labor were the private property of the copartnership for which he worked, or of the lumber company. The general rule is that mechanics' or other lien laws do not, in the absence of express legislation to that effect, confer a right of lien in favor of materialmen or laborers as against public property. Jordan v. Board of Education, 39 Minn. 298, 39 N. W. 801; 20 Am. & Eng. Enc. (2d Ed.) 295. Therefore, as the government was the owner of the logs, plaintiff has no valid lien against them. That the government did own them is clear. At least there is no allegation in the complaint, and no finding of the court to the contrary. The land on which the timber stood belonged to the government, and this carried with it title to the timber, as well. The fact that the title to the logs passed to the lumber company subsequent to the performance of plaintiff's labor does not change the situation in the least. The lumber company took such title as the government possessed at the time of the sale, and that title was clear and free of plaintiff's asserted lien. It is true that in several cases this court has held that the laws of this state, statutory and otherwise, extend over and operate within the White Earth Indian Reservation, and persons residing thereon may resort thereto for the protection of property rights; but these laws can have no greater or broader operation or effect there than elsewhere, and, if our lien statutes do not confer a right of lien upon public property generally, they can have no such effect within the reservation.

What has been said is based upon the complaint and the findings of the trial court, by which, as we have already stated, we are guided in disposing of the case. But if the evidence be referred to, plaintiff is in no better position. Defendant's answer sets out all the facts pertinent to the issues in the case—that the logs in controversy were the property of the general government, and were cut by Conklin, Hardman & Broker under a contract with the

Indian agent—all of which the trial court found not sustained by the evidence, on the ground that such facts were irrelevant and immaterial.

It appears from the evidence that on December 29, 1900, the general government, through its Indian agent, entered into a contract with defendant lumber company by which it agreed to sell all the pine timber standing or fallen upon certain lands within the White Earth Indian Reservation, upon the terms and conditions specified in the writing, and subject to the rules and regulations of the Interior Department. These rules and regulations require the Indian agent to enter into contracts for cutting, hauling, and banking such logs and timber, and to assume charge of and superintend all work in that behalf. The contract with the lumber company provided that no title to the logs should pass to it until they were cut and banked at a certain designated place, and full payment made therefor. To carry out this contract, the Indian agent on December 31, 1900, entered into a contract with Conklin, Hardman & Broker by which that firm undertook and agreed to cut, haul, and bank the dead and down timber upon certain land, which is the same as that described in the contract with the lumber company, for the compensation specified therein. By the rules and regulations of the Interior Department, which were made a part of this contract, also, the Indian agent was required to superintend the work of cutting and banking such logs; and there is no suggestion in the evidence that the lumber company was in any way responsible for the performance of that contract, or in any way concerned with it, except that by its contract an agreement was made to advance to the Indian agent certain sums of money to enable the agent to defray the expenses incident to cutting and banking the logs. From these contracts it appears that the general government retained title to all the logs cut and banked by the firm of Conklin, Hardman & Broker until long after the performance of their work, when the lumber company made payment therefor, and they were transferred to it. The work performed by Conklin, Hardman & Broker was for the general government, while it still owned the logs, and no

valid lien attached thereto on account of such labor.  The contract with the lumber company for the sale of the logs, though entered into prior to the time the logs were cut, was executory; and neither the title, nor any beneficial interest therein, passed from the government until they were put in a deliverable state and fully paid for.  Day v. Gravel, 72 Minn. 159, 75 N. W. 1; Martin v. Hurlbut, 9 Minn. 132 (142); Restad v. Engemoen, 65 Minn. 148, 67 N. W. 1146.

The evidence presents precisely the same case as is presented by the complaint, aided by the presumptions we are required to indulge in.  So that, whether the case be disposed of on the basis of the findings of fact, or upon the evidence, the result is the same—plaintiff is not entitled to recover.

Order reversed.