JOSEPH FREDETTE *vs.* MORRIS THOMAS.

Argued April 27, 1894.   Affirmed May 7, 1894.

No. 8364.

**Contract to sell and deliver logs construed.**

*Held* that, upon the undisputed facts of this case, there was a delivery of the property sufficient to pass the title, and consequently the risk, from the vendor to the vendee.

Appeal by defendant, Morris Thomas, from a judgment of the District Court of St. Louis County, *J. D. Ensign*, J., entered December 7, 1892, against him for $428.02.

On November 20, 1890, the plaintiff, Joseph Fredette, made a contract in writing with defendant to cut into logs and piles the merchantable timber on Section 36, T. 48, R. 16, in Carlton County, and deliver the same to defendant on or before April 10, 1891, upon the right of way of the Northern Pacific Railroad near Carlton Station at points most convenient for loading them onto cars. Defendant agreed to pay for logs so delivered $4.25 per thousand feet board measure for pine sawlogs and $5 per thousand feet for hard wood sawlogs.   The logs were to be scaled by the surveyor general of logs for that district and defendant agreed to pay for the scaling and in consideration thereof Fredette agreed to furnish all car stakes necessary for loading the logs.   Defendant further agreed to pay one half the purchase price of the logs from time to time as they should be banked and the balance when he should sell them in the spring or summer following.   It was further agreed that Fredette should pay all stumpage that might attach to the logs.

On or before March 15, 1891, Fredette cut and banked about 180,000 feet board measure of pine sawlogs and furnished sufficient car stakes for loading them, and on March 22, notified defendant thereof.   But defendant neglected to have the logs scaled or shipped to market and on May 6, 1891, the logs were destroyed by fire without fault on the part of anyone.   Defendant had paid Fredette $384.05 on account, and this action was to recover the balance of the purchase price.   On these facts plaintiff had a verdict for $379.04.   Defendant moved for a new trial but was de-

nied.   Judgment was entered for the amount with costs and defendant appeals.

*William B. Phelps*, for appellant.

*Tear Davis & Bureau*, for respondent.

MITCHELL, J.   Aside from the question of quantity or amount, the only issue in this case was whether, at the time the logs were destroyed, on May 6th, there had been a delivery sufficient to pass the property, and consequently the risk, from plaintiff, the seller, to defendant, the buyer.   It seems to us that, upon the undisputed facts, the written contract of the parties is decisive of that question.   It expressly provides what the mode or manner of delivery shall be, to wit, placing the logs, on or before April 10th, on the railroad right of way near Carlton Station, in the most convenient position for loading on the cars; and for logs "so delivered" the defendant was to pay the stipulated price per thousand. We are of opinion that under this contract there was a delivery of the logs so as to pass title to the defendant as soon, and as fast, as they were deposited at the place, and in the manner, provided for.   The undisputed evidence is that the logs were thus deposited on or before April 10th.

It seems to us that the contentions of defendant are all based on the assumption that the contract is entire in certain respects wherein it is in fact severable, and that certain stipulations in it are conditions precedent to a delivery which have no connection with it.   The contract clearly contemplates delivery as well as payment by installments.   There is nothing in the nature of the property to indicate that the cutting and delivery of both the logs and the piles, or of every log on the land, was essential, or could affect the object of the contract, or would have influenced the sale had a failure in that respect been anticipated.   *McGrath* v. *Cannon*, 55 Minn. 457, (57 N. W. 150;) *Potsdamer* v. *Kruse, post*, p. 193, (58 N. W. 983.)

The provisions as to scaling and as to "car stakes" were entirely independent of, and disconnected with, the matter of the delivery of the logs.   Either of these things could and might have been done after, as well as before, delivery.   Indeed, the fair inference is that the scaling was to be done after delivery.   It was a matter

that had reference solely to ascertaining the quantity of the logs; and, under the contract, defendant himself had a perfect right to have it done.

There is nothing in the point that, as one-half of the purchase money was to be paid when defendant sold the logs in the spring or summer of 1891, and inasmuch as the logs have been destroyed before sale, therefore defendant is not liable. That provision has reference merely to the time of payment, and was not intended to make the purchase price payable only out of a special fund, to be derived from the sale of the property.

The contract contains a stipulation that plaintiff "shall pay for all stumpage that may attach to the said logs." We fail to see that this has any connection with the delivery of the logs, unless, forsooth, it should appear that they were subject to some lien for stumpage, the existence of which would preclude any delivery that would pass the title. It is urged, however, that it appears that the logs were cut on state land under a permit, and that plaintiff cannot recover the purchase price, because it does not appear that the stumpage has been paid. There is nothing in either the pleadings or the contract to indicate that the logs were cut on state land, or that any stumpage was in fact due either the state or any one else; and from an examination of the record we are satisfied that no such point was either raised or suggested on the trial. Most of the evidence on the trial was directed to the question of the number of feet in the logs, the defendant claiming that their average size was much less than testified to by plaintiff; and to prove this he introduced witnesses who were familiar with section 36, and who testified that it had been cut over before and that what timber was left was of small size. Among these witnesses was one Frazier, who testified that in 1889 he examined the land, and found so little timber on it that he advised the state auditor to sell it to plaintiff for the lump sum of $100, which was done. This evidence was manifestly introduced for the sole purpose of showing the poor quality and small size of the logs, and the use now sought to be made of it was not once suggested on the trial. It nowhere appears that plaintiff did not pay the state $100, or that the logs are, or ever were, subject to any lien for stumpage.

We think that the trial judge would have been justified in instructing the jury that there had been a delivery of the logs sufficient to pass the title. This being so, his submitting the question to the jury could not have prejudiced the defendant, and the errors, if any, in the charge on that point, are wholly immaterial.

Judgment affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 58 N. W. 984.)