### J. W. DAY and Others v. CHARLES GRAVEL.

May 3, 1898.

Nos. 10,867—(42).

**Sale of Logs—Executory Contract—Transfer of Title—Damages.**

A certain contract for the sale of logs construed; and *held*, that it was executory, and that the property in the logs did not pass to the buyer when the contract was made.

Appeal by defendant from an order of the district court for Morrison county, Baxter, J., denying a motion for a new trial, after a verdict in favor of plaintiffs for $2,283.80. Reversed.

*Calhoun & Bennett* and *John H. Rhodes*, for appellant.

The contract was executory. Thompson v. Libby, 35 Minn. 443; Martin v. Hurlbut, 9 Minn. 132 (142); Gasper v. Heimbach, 53 Minn. 414; Nicholson v. Taylor, 31 Pa. St. 128; Malone v. Minnesota Stone Co., 36 Minn. 325; Elgee Cotton Cases, 22 Wall. 180; Note to Dunn v. Georgia, 3 L. R. A. 199; Note to 17 L. R. A. 176. The question is one wholly of intention which is ordinarily a matter of fact to be found by the jury. 3 L. R. A. 199, note; Engel v. Scott & H. L. Co., 60 Minn. 39; Northern P. L. & M. Co. v. Kerron, 5 Wash. 214; Kost v. Reilly, 62 Conn. 57.

Plaintiffs, having knowledge of the Bassett contract, woud be liable for whatever loss defendant might suffer thereunder by reason of plaintiffs' failure to drive the logs. Hadley v. Baxendale, 19 Exch. 354; Note in 6 Eng. Rul. Cas. 617, 624; Cockburn v. Ashland Lumber Co., 54 Wis. 619; Griffin v. Colver, 16 N. Y. 489; U. S. v. Behan, 110 U. S. 338, 344; Cutting v. Grand Trunk Ry. Co., 13 Allen, 381; Hurd v. Dunsmore, 63 N. H. 171; Buffalo B. W. Co. v. Phillips, 64 Wis. 338; Berkey & G. F. Co. v. Hascall, 123 Ind. 502; Abbott v.

Hapgood, 150 Mass. 248; Blagen v. Thompson, 23 Ore. 239; Williston v. Mathews, 55 Minn. 422; Gasper v. Heimbach, supra; Crane v. Wilson, 105 Mich. 554.

*Lindberg, Blanchard & Lindberg* and *Choate & Merrill,* for respondents.

START, C. J.

On March 23, 1894, the parties hereto entered into a contract whereby the plaintiffs agreed to drive to the Mississippi river all logs on the Platte river then belonging to the defendant, bearing certain marks, for a stipulated price per thousand feet, payable when the logs were in the Mississippi. The contract was silent as to the time within which the plaintiffs should perform the contract on their part. This action was brought to recover the contract price for driving the logs.

There was no controversy between the parties as to the contract, or the number of feet of logs actually driven by the plaintiffs, but the defendant set up certain counterclaims. The second one was to the effect that the defendant, prior to entering into the contract with the plaintiffs, had contracted to sell the logs in question to the J. B. Bassett Lumber Company, to be delivered in the Mississippi river during the season of 1894, to be paid for when there delivered; that the plaintiffs had knowledge of this contract when they entered into the driving contract with defendant, and that they could reasonably and easily have driven all of the logs into the Mississippi during the season of 1894, but that they neglected and refused so to do; that by reason thereof the defendant was obliged to, and did, sell the logs for $2,474 less than he would have received if the plaintiffs had driven them within a reasonable time, and that he thereby lost the use of the purchase price of the logs for one year; and, further, that by reason of such neglect and refusal the defendant was damaged $3,599.67. On the trial this counterclaim was amended by setting out in full the Bassett contract, which is designated as "Exhibit E." The material provisions of Exhibit E are in these words:

"For and in consideration of the payments hereinafter named, the said party of the first part hereby sells and agrees to deliver to

said parties of the second part, into the Mississippi river at the mouth of the Platte river, as early in the spring of 1894 as the driving will permit, 2,200,000 feet, more or less, of pine logs; being all the logs cut by said first party and landed on the Platte river during the winter of 1893 and 4, and marked XA and XL, and stamped XL and XB. For and in consideration of the delivery of such logs as aforesaid, free of all incumbrance, the said parties of the second part agree to pay to the said party of the first part the sum of $6.50 per M for all logs so delivered, in accordance with the scale of the surveyor general as made on the landing, in the following manner: $2 per thousand feet on signing this contract (the receipt whereof is hereby acknowledged), $1.25 per thousand feet when all of above-mentioned logs are delivered in the Mississippi river as above mentioned, $1 per thousand feet sixty days thereafter, and the balance December 1st, after all logs have been so delivered." "It is hereby further agreed by said party of the first part that, when the second payment is made, he will have the logs specified in this contract transferred to the said parties of the second part, free of all incumbrance."

On the trial the defendant offered evidence tending to show that the logs might reasonably have been driven by the plaintiffs in the spring of 1894, and by July 1, and, according to the usual custom, should have been driven within that time, but that they were not driven until July, 1895. He also offered Exhibit E in evidence. The court received the evidence, against the plaintiffs' objections. The defendant then offered to show that he tendered the logs in 1895 to the J. B. Bassett Company under the contract, Exhibit E, that the company refused to take or pay for them, for the reason that they were not delivered in time; and, further, that the market value of the logs in 1895 was $1.50 per thousand less than it would have been if the logs had been driven within a reasonable time in 1894. The court, on the objection of the plaintiffs, rejected this and all other evidence as to this counterclaim, and withdrew it from the jury. The record does not disclose the reason for the trial court's decision, but it is here conceded by both parties that the basis of the trial court's action was that Exhibit E was an executed contract, and by it the title to the logs vested at once in the Bassett Company, and therefore the defendant could not have lost the sale of the logs, and could not have been damaged in the manner

72 M.—11

claimed. This is the only ground upon which the plaintiffs here seek to sustain the ruling of the trial court.

The precise question for our consideration is stated in the plaintiffs' brief thus:

"The question is, as above stated, did the title pass to Bassett? We claim that it did, and claim that the case of Rail v. Little Falls Lumber Co., 47 Minn. 422, is in point, and that there is no difference in principle between the two cases."

Therefore this is the only question with reference to this counterclaim which we shall consider.

Technical defects or omissions in the allegations of the amended counterclaim, if any there are, must be deemed waived, for they are not urged in the brief of counsel, or otherwise. We have, then, as the sole question on this appeal, was Exhibit E an executed contract, and did the title to the logs, by virtue thereof, vest absolutely and immediately in the purchaser? We answer the question in the negative.

In contracts for the sale of goods, the test as to whether the title vests immediately in the buyer is the intention of the parties. The rules for ascertaining such intention are well settled, and are, so far as here material, as follows: (a) Where there is an unconditional contract for the sale of specific goods, in a deliverable state, the property, unless a different intention appears, passes to the buyer when the contract is made, and it is immaterial whether the time of payment or the time of delivery, or both, be postponed. (b) Where there is a contract for the sale of specific goods, and the seller is bound to do something to the goods for the purpose of putting them into a deliverable state, the property does not pass until such thing be done. Benjamin, Sales, §§ 68–72. The cases of Martin v. Hurlbut, 9 Minn. 132 (142); Thompson v. Libby, 35 Minn. 443, 29 N. W. 150; Restad v. Engemoen, 65 Minn. 148, 67 N. W. 1146, and Welter v. Hill, 65 Minn. 273, 68 N. W. 26, affirm and illustrate the last rule stated; while the case of Rail v. Little Falls Lumber Co., supra, declares and applies the first one.

This last case was clearly within the first rule, for the bill of sale included "the precise number of logs lying upon the bank, the mark which had been placed upon each, the total number of feet

therein according to the scale bill." It (the bill of sale) was a completed contract, and the intention of both parties that the property should pass to the buyer was obvious on its face. Not so with the contract in question, for upon its face it is not clear that the quantity of logs sold had been ascertained, or all of them landed and scaled, at the time the contract was made; that is, on March 15, 1894. Especially is this so in view of the oral evidence to the effect that the last of the logs were hauled, banked, and marked the last of March, or April 1, 1894.

But, whatever doubt there might otherwise be as to the intention of the parties to this contract, it is put at rest by their express agreement, which provides that the logs shall be transferred to the buyer when the second payment is made; that is, when the logs are delivered in the Mississippi river. It is claimed that this agreement is simply one for the transfer of the log marks. The language of the contract does not justify any such construction. Besides, the transfer of a log mark operates as a sale or transfer of all of the logs bearing such mark. If it was the intention of the parties that the absolute property in the logs should pass to the buyer as soon as the contract was signed, why should the transfer of the log marks be postponed to a future day? If the words of the contract, "When the second payment is made," defendant "will have the logs specified in this contract transferred," can be construed as referring to the marks, and not to the logs, still the words would clearly indicate that it was the intention of the parties that the title to the logs should not pass until the second payment was made.

Exhibit E was not an executed, but an executory, contract; and the title to the logs therein described did not pass to the buyer as soon as the contract was made. It follows that the trial court erred in rejecting the defendant's evidence as to his damages under his counterclaim, and in withdrawing from the jury all consideration of the counterclaim, and that a new trial must be awarded.

With reference to such trial, it is only necessary to add that, no time having been expressly agreed upon by the parties within which the plaintiffs were to drive the logs, the law implies a promise on their part to perform the contract within a reasonable time. The question of reasonable time is one for the jury. Rob-

erts v. Mazeppa Mill Co., 30 Minn. 413, 15 N. W. 680; Palmer v. Breen, 34 Minn, 39, 24 N. W. 322.

And, further, the defendant's damages are such only as directly and naturally result, in the ordinary course of events, from the plaintiffs' breach of their contract to drive the logs, and such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as a probable result of its breach. Therefore, if the plaintiffs in this case, when they entered into the contract with the defendant, knew that his purpose in making the contract was to enable him to fulfill his contract with the lumber company, and there was a breach of plaintiffs' contract by them, whereby the defendant was prevented from performing his contract with the lumber company, he would be entitled to recover from the plaintiffs any loss of profits in the premises directly traceable to such breach. It is not practical to make any concrete application of this rule, except to say that, if the defendant establishes the facts essential to bring his case within the rule, he will be entitled to recover the difference between the market value of the logs in 1895 and the contract price he would have received if they had been driven in time to enable him to deliver them under his contract. If there were in fact no such diminution, he would be entitled to whatever he might have lost as interest on the agreed price. 3 Sutherland, Meas. Dam. §§ 906, 907; Paine v. Sherwood, 21 Minn. 225.

And, lastly, the trial court did not err in rejecting defendant's counterclaim of $160 for use of his dams. The evidence disclosed no authority on the part of the defendant to levy such toll for logs navigating the river.

Order reversed, and a new trial granted.