WARREN POTTER and Another v. E. G. HOLMES and Another.[1]

November 21, 1902.

Nos. 13,257—(55).

## Construction of Contract.

An executory contract in effect from September 15, 1893, to September 1, 1894, provided that appellants should deliver upon the line of the Northern Pacific Railroad Company all the railroad cross-ties purchased and handled by them, according to certain specifications as to the character, quality, and dimensions of the ties, which were to be piled and marked in a certain manner by appellants. The respondents agreed, within a certain time after inspection, to pay for all ties delivered that should be inspected and accepted by the Northern Pacific Railroad Company.

1. *Held*, That the contract was an agreement by respondents to purchase for themselves, and not conditioned upon a sale to the railroad company, and that the only object of inspection was to determine whether or not the ties offered by appellants were within the specifications.

2. *Held*, the court erred in dismissing the action, for the reason that there was evidence tending to show that appellants had performed all of the acts required of them by the contract in reference to delivery, marking, and piling the ties.

3. *Held*, further, that the title vested in respondents, and a right of action accrued in appellants at the time inspection was refused, provided the ties had been properly delivered, piled, and marked, and request for inspection had been made by appellants.

4. *Held*, that there was evidence tending to show such facts, and tending to show that respondents had waived the necessity of a demand on the railroad company for inspection, and that proper demand had been made and refused.

[1] Reported in 92 N. W. 411.

Action in the district court for Aitkin county to recover $11,370, the contract price of railroad ties sold and delivered to defendants. The case was tried before Cant, J., sitting for the judge of the fifteenth judicial district, who, upon conclusion of the testimony, granted a motion to dismiss the action. From an order denying a motion for a new trial, plaintiffs appealed. Reversed.

*A. Y. Merrill* and *F. E. Ebner*, for appellants.

When goods are sold, if the vendor has delivered them at the place agreed and there remains nothing for him to do, he may maintain an action for the contract price although the vendee refuse to accept the goods. Wood v. Michaud, 63 Minn. 478; Nichols v. Morse, 100 Mass. 523; Rodman v. Guilford, 112 Mass. 405; McLean v. Richardson, 127 Mass. 339, 345; Barton v. McKelway, 22 N. J. L. 165; Greaves v. Ashlin, 3 Camp. 426. In such case the vendor may, if the vendee refuse to accept and pay for the goods, elect to treat the goods as the property of the vendee and sue for the contract price, or otherwise dispose of the goods and bring an action for damages for breach of the contract. Schneider v. Oregon, 20 Ore. 172. Actual delivery is not necessary to pass title. Rail v. Little Falls Lumber Co., 47 Minn. 422; Whitcomb v. Whitney, 24 Mich. 486; American note to sections 699–705, Benjamin, Sales; Benjamin, Sales, 159. The question whether the plaintiffs did or did not do all that was necessary to constitute a delivery of the ties was for the jury. Jennison v. Thompson, 68 Minn. 333.

*Harris Richardson*, for respondents.

If the contract was executory, and not executed, the plaintiffs' remedy would be for damages for its breach, and not for the contract price. See Restad v. Engemoen, 65 Minn. 148; Jones v. Jennings, 168 Pa. St. 493; Jones v. Schneider, 22 Minn. 279; Hoover v. Maher, 51 Minn. 269; Neal v. Shewalter, 5 Ind. App. 147; Davis v. Bronson, 2 N. D. 300. This contract was executory. Martin v. Hurlbut, 9 Minn. 132 (142); Fishback v. G. W. Van Duzen & Co., 33 Minn. 111; Thompson v. Libby, 35 Minn. 443; Day v. Gravel, 72 Minn. 159; Locke v. Williamson, 40 Wis. 377; Nicholson v. Taylor, 31 Pa. St. 128.

LEWIS, J.

The litigation in reference to this matter has been pending about eight years, and this is the fourth time the case has reached this court, and a somewhat full statement of the facts seems necessary for a proper consideration of the controversy.

Appellants and respondents entered into a certain written contract, of date September 15, 1893, by the terms of which appellants agreed to sell and deliver to respondents railroad cross-ties of certain particular kinds and dimensions. The contract contained a provision that the ties should be delivered on the line of the Northern Pacific Railroad Company on or before September 1, 1894; that each kind must be piled by itself, laid up in tiers, and placed on skids, with the owners' name or trade-mark in black paint, or cut into the wood, plainly marked on each and every pile. It was also provided that the contract was subject to any changes in reference to specifications of the ties which the Northern Pacific Railroad Company might make. The provision regarding payment is as follows:

"The parties of the first part agree to pay for all said ties that have been inspected and accepted by the Northern Pacific Railroad Company, except in cases hereinafter specified, as follows: Seventy-five per cent. thereof within thirty days after each inspection, and the remaining twenty-five per cent. within thirty days after completion of this contract; but said twenty-five per cent. shall not be paid until the said second party shall have fulfilled and carried out their part of this contract."

There was a special provision that, until the ties to be delivered under this contract should be inspected and accepted by the Northern Pacific Railroad Company, the appellants should assume all risk of loss or damage thereto from any cause, including that by fire communicated by the engine or cars of the company. The contract also provided that, if appellants should fail to deliver any portion of the ties within the time or at the places therein provided, they should pay respondents twenty-five per cent. of the contract price, as liquidated damages, for such ties as they should fail to deliver. There was another provision to the effect that appellants agreed to handle over the ties as they were being

inspected, if so required by the inspector. There were provisions to the effect that appellants were the owners of the ties they contracted to sell, and that they would furnish respondents, whenever requested to do so, proofs of such ownership, and, in case of failure to furnish such proof of ownership when requested, no payment should be made for the ties whereof ownership was called into question until proof was furnished. There was also a condition that, if the title to any part of the ties should at any time prove defective, appellants should pay back any amount that was paid therefor. The contract contained a further provision to the effect that if appellants should fail to comply with any of the terms of the agreement, or should become insolvent, the contract should be determined at the option of the respondents, who should have the right to take possession of all the ties, wherever they might be, and sell them without notice.

Appellants began operations under this contract in the fall of 1893, and continued in purchasing and delivering ties along the Northern Pacific Company's line until February 3, 1894, when requested by respondents to cease operations. A few ties were inspected and accepted by the railroad company in December, 1893, and appellants, in obedience to the request, discontinued operations under the contract; and this action was brought for the purpose of recovering the purchase price of the ties which they had delivered along the line of railroad prior to that time.

It is claimed by appellants that the ties so delivered were within the specifications set forth in the contract, and that appellants had performed all of the acts required by them to be performed in reference thereto, and that due demand for inspection was made and refused. A defense was interposed to the effect that the ties so delivered and piled by appellants along the line of railroad were not within the specifications required by the contract, and that it was contemplated by the parties to such agreement that the ties so purchased and delivered were for the exclusive use of the Northern Pacific Railroad Company, and that if the railroad compay would not inspect, accept, and purchase the ties, the respondents were under no obligations to accept the ties from appellants,

and that the railroad company never had inspected or accepted the same.

At the close of appellants' case, the trial court dismissed the action upon the ground that at the time of the commencement of the action the title to the ties in question had not passed from appellants to respondents, and that appellants had mistaken their remedy, and that the action should have been for damages for the breach of an executory contract. This appeal, therefore, calls for a consideration of the question, whether it conclusively appears from appellants' evidence that the title had not vested in respondents, and consequently that no right of action had arisen at the time suit was commenced.

The agreement was an executory contract, but, from the conditions and provisions comprising it, we are of the opinion that it was the intent of the parties to vest the title to the ties in respondents at the time they should be inspected and accepted by the railroad company. In order to vest such title in respondents, it was necessary for appellants to perform every act required of them in the way of delivery, grading, piling, and marking the ties; and if, in the process of inspection, it became necessary to rehandle them, they were required to perform such services, and until all of such acts had been performed, if required, they were in no position to claim that the title had passed from them. But upon the other hand, this was a contract for the purchase of ties by respondents, and not by the Northern Pacific Railroad Company. The railroad company was selected as an inspector, not because it was contemplated that it must necessarily purchase the ties before title could pass, but because it was agreed upon as the party to determine whether or not the ties offered were within the specifications; and it is immaterial that the railroad company purchased or refused to purchase from respondents, either because it already had an excess of ties on hand, because the railroad company had passed into the hands of receivers, or because there was no money to pay for them.

The correspondence between appellants and respondents tends to show a demand for inspection, and to explain the reason for not making the same. It is, in substance, as follows: On February 2,

1894, respondents notified appellants to discontinue making tamarack ties, and on the next day notified them not to purchase any more ties under the contract unless they were prepared to carry them until such time as an inspection could be had for the surplus. This letter contained the statement that ties were being delivered in excess of the road's requirements, and that money could not be secured to take care of such a large excess. Under date of February 26, 1894, appellants wrote a letter to respondents, requesting them to inspect the ties already delivered, and, if not prepared to pay for them in cash, to give a note for the amount due, and again on March 10, calling attention to their previous letter, and asking for inspection and settlement. In reply, on March 24, respondents wrote appellants that they had sent their representative, Wood, to call and explain the situation; that, owing to a certain suit pending against the railroad company, the receivers were not inclined to enter into any arrangements for taking up the ties until after a decision by the court; that they had made the receivers a proposition which they felt sure would be accepted when they were in shape to transact business; and the letter closed with expressions of regret that they were unable to have the ties inspected at that time, and promising to do so at the earliest possible moment, and, if unable to make arrangements to have the ties inspected by the Northern Pacific Railroad Company within the next fifteen days, they would then make appellants a proposition in regard to inspection. On May 10, 1894, appellants wrote, calling attention to the promises contained in respondents' previous letter, and asking for a proposition and settlement. The correspondence closed with a letter from respondents, of date May 11, 1894, in which they agreed to stand by any proposition their representative, Wood, who would soon call on them, might make.

It also appears from the evidence that appellants made an attempt to demand an inspection from certain alleged representatives of the railroad company, who, respondents claim, it was conclusively shown were not the proper representatives of the railroad company, nor the duly authorized representatives of the receivers then operating the railroad. It further appears that respondents were extensive contractors of the railroad company, and

were engaged in many contracts for the purchase of ties, and controlled the stumpage on railroad lands. By respondents' letter of March 24, they assumed to notify appellants that they were endeavoring to arrange matters so that all ties on the line delivered by them could be inspected, but that the receivers did not feel like taking up the question of inspection until certain litigation pending against them was settled, and wrote:

"We regret we are unable to have your ties inspected at this time, and assure you we will inspect them at the earliest possible moment. In case we cannot within the next fifteen days make an arrangement to have the ties inspected by the Northern Pacific Railroad Company's inspectors, we will make you a proposition at that time in regard to inspection."

Under such circumstances, it would have been useless for appellants to pursue the railroad company or the receivers with demands for inspection. This evidence is within the allegations of the complaint, as construed in 65 Minn. 377, 68 N. W. 63, and 72 Minn. 153, 75 N. W. 591. While necessary to plead and prove the reason why inspection was not made according to the terms of the contract, the respondents themselves have furnished the explanation, and appellants were justified in relying upon it. It is therefore not material whether appellants subsequently made demand upon the receivers or the railroad company.

Respondents insist that the evidence conclusively shows that appellants failed to deliver the character of ties required by the specifications, and therefore, conceding that the title would pass upon a demand and refusal to inspect, such acts not having been performed, the title did not become vested in respondents. There was some controversy as to whether the ties were properly marked and piled, but the ties were not refused upon that ground, and it was for the jury to determine that fact. There was evidence in the case tending to show that such requirements had been substantially complied with, and it was error to dismiss the case for such reasons.

Order reversed.