## STATE v. PATRICK MEEHAN and Another.[1]

### June 3, 1904.

### Nos. 13,825—(22).

**Contract Construed.**

A certain contract for the sale of logs construed. *Held*, that it was executory, and title to the logs did not pass to the purchaser at the date of execution of the contract, and they were properly assessable for taxation purposes against the vendor on May 1, 1899.

**Statute.**

That portion of chapter 246, p. 285, Laws 1899, providing that the court shall hear objections to and determine the validity of personal property taxes at the first term after same become delinquent, is directory.

[1] Reported in 100 N. W. 6.

In proceedings in the district court for Red Lake county for the enforcement of personal property taxes for the year 1899, defendants interposed an answer in which they alleged that on May 1, 1899, they owned no personal property in said county. The case was tried before Watts, J., who found in favor of the state for $816.75, being the amount of the tax and penalty. From a judgment entered pursuant to the findings, defendants appealed. Affirmed.

*Davis, Kellogg & Severance,* for appellants.

*F. A. Grady,* for the State.

DOUGLAS, J.

This is an appeal by P. & J. Meehan from the judgment of the district court of Red Lake county entered against them in the matter of the collection of personal property taxes payable in said county for the year 1899.

On April 1, 1899, Patrick and James Meehan entered into an agreement to sell to John Daly a large amount of property owned by them situated in Red Lake county. This agreement included (with other property actually delivered) approximately thirteen million feet of white pine, Norway pine, spruce, and tamarack saw logs, which were duly assessed as their property in said county on May 1, 1899. So far as material, it is as follows:

> Said P. & J. Meehan agree to sell and deliver to said corporation all their white pine, Norway pine and spruce, tamarack saw logs consisting of about thirteen million feet more or less to be delivered during the sawing season of 1899 into mill pond in Thief River Falls, Minnesota, said logs are marked as follows: * * * for the sum of six and $^{75}/_{100}$ dollars per M feet log scale to be scaled at mill by some competent men to be mutually agreed upon. Scalers work may be tested from time to time and if unsatisfactory to either party hereto change to be made as soon as practicable to some man or men to be mutually agreed upon. In case parties are unable to agree upon scalers the surveyor general of this district of Minnesota is to appoint scaler or scalers to scale said logs. Logs to be scaled by Scribner's decimal log rule and each of the parties hereto to pay one-half expense of scaling. Reports to be made month-

ly or when desired to each of the parties hereto. Payments for said logs to be made as follows: All logs scaled during each month to be settled for the first of the month following by giving a note running six months with interest at 5% per annum.

The logs were scattered along the Red Lake river and tributary streams. During the summer of 1899, P. & J. Meehan drove substantially all the logs in question across Red Lake and down Red Lake river into a mill pond in Thief River Falls, Minnesota, and delivered them to John Daly. They were scaled and paid for from time to time, and subsequently the registered log marks were transferred. The trial court found the property was owned by P. & J. Meehan on May 1, 1899, and entered judgment for the amount of the tax extended on the taxbooks for the year 1899.

The validity of the tax depends upon the construction to be given to such contract. If the title to the logs passed to the purchaser upon its execution, the tax is void; otherwise it is valid. The test applicable to contracts where payment of the purchase price and delivery are deferred is stated in Rail v. Little Falls Lumber Co., 47 Minn. 422, 50 N. W. 471, as follows: "The rule is that when the chattels are clearly designated and appropriated to the contract, are ready for immediate delivery, and the terms of sale, including the price, are explicitly given, there is an executed contract, and the title to the property, as between the parties, passes to the purchaser, even without actual payment or delivery."

The rule applicable to such contracts was again clearly stated by Chief Justice START in Day v. Gravel, 72 Minn. 159, 75 N. W. 1: "In contracts for the sale of goods, the test as to whether the title vests immediately in the buyer is the intention of the parties. The rules for ascertaining such intention are well settled, and are, so far as here material, as follows: (a) Where there is an unconditional contract for the sale of specific goods, in a deliverable state, the property, unless a different intention appears, passes to the buyer when the contract is made, and it is immaterial whether the time of payment or the time of delivery, or both, be postponed. (b) Where there is a contract for the sale of specific goods, and the seller is bound to do something to the goods for the purpose of putting them into a deliverable state, the

property does not pass until such thing be done. Benjamin, Sales, §§ 68–72.

"The cases of Martin v. Hurlbut, 9 Minn. 132 (142); Thompson v. Libby, 35 Minn. 443, 29 N. W. 150; Restad v. Engemoen, 65 Minn. 148, 67 N. W. 1146; and Welter v. Hill, 65 Minn. 273, 68 N. W. 26, affirm and illustrate the last rule stated; while the case of Rail v. Little Falls Lumber Co., supra, declares and applies the first one.

"This last case was clearly within the first rule, for the bill of sale included 'the precise number of logs lying upon the bank, the mark which had been placed upon each, the total number of feet therein according to the scale bill.' It [the bill of sale] was a completed contract and the intention of both parties that the property should pass to the buyer was obvious on its face. Not so with the contract in question, for upon its face it is not clear that the quantity of logs sold had been ascertained, or all of them landed and scaled, at the time the contract was made; that is, on March 15, 1894. Especially is this so in view of the oral evidence to the effect that the last of the logs were hauled, banked, and marked the last of March or April 1, 1894."

In our opinion, the contract under consideration is not distinguishable in principle from the agreement before the court in Day v. Gravel; on the other hand, it differs in essential particulars from that under consideration in Rail v. Little Falls Lumber Co. In the latter case it appears the logs which the court held passed to the purchaser upon the execution of the contract without actual payment of the consideration and before delivery were clearly designated in the agreement, and ready for immediate delivery. While in the case at bar, as in Day v. Gravel, the logs had not been scaled, and were not "in a deliverable condition" at the mill pond in Thief River Falls, which was the place mutually agreed upon for a delivery. All the logs owned by appellants were the subject of assessment, either against appellants or the purchaser. Had the logs been stolen or destroyed by fire, could it be said the risk was that of the purchaser? At the date of sale they were scattered for a long distance up the river, were unmeasured, and, aside from the fact that a large amount of work remained to be done to place them in the pond at Thief River Falls, it is clear a serious loss would necessarily occur in the drive.

We are therefore of the opinion the logs were not, as stated in the Rail case, designated by the contract and ready for immediate delivery. In our judgment, the important features to note are that the logs were not at the place of delivery, were unmeasured, and some of them could not reach there. Eliminating the matter of work to be done by appellants in transferring the logs, it follows the contract entered into, so far as the logs were concerned, was executory; that the title thereto did not pass until after May 1, and the same were properly assessable against appellants.

Our attention is called to chapter 246, p. 285, Laws 1899, which provides, in substance, that all contests involving the validity of personal property taxes shall be tried and determined at the first term of court held next after the same become delinquent. It is insisted that, inasmuch as the proceedings herein were not concluded and judgment rendered at such term, the court lost jurisdiction thereof. We are unable to concur in this view. In our judgment, the act is directory.

Judgment affirmed.