# JAMES E. GARDNER v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

June 21, 1912.

Nos. 17,586—(141).

**Sale — vesting of title.**

A memorandum for the sale of ties examined, and *held* not to show as a matter of law that title to the property did not vest in the purchaser until inspection or full payment had been made.

**Same — question of fact.**

Under the evidence the intention of the parties to the sale as to when the

[1] Reported in 136 N. W. 1028.

title to the ties passed from the seller to the purchaser was a question of fact to be determined by the jury.

**Same.**

If the title vested in the purchaser, his refusal or neglect to make the stipulated payments does not revest title in the seller.

**Evidence — declarations of litigant.**

The conduct or declarations of a litigant, or one through whom he claims, subsequent to a transaction and after a controversy over it has arisen, are not admissible in his favor; and hence there was no error to exclude the offer of the defendant to prove that the seller, after accepting the price for the ties from the defendant, kept money in the bank to pay back what the first purchaser had paid on the ties.

**Charge to jury.**

No error appears in the instructions given to the jury, nor in the refusal to instruct.

**Excessive damages.**

The damages are not so excessive as to indicate that the jury were actuated by passion or prejudice.

Action in the district court for St. Louis county to recover $1,253.60 for the conversion of a quantity of railway ties. The answer alleged that defendant was the owner of the ties mentioned in the complaint, denied that they were of the value of $1,253.60, and alleged that they were worth $997.68. The reply was a general denial. The case was tried before Cant, J., who when plaintiff rested denied defendant's motion to direct a verdict in its favor, and a jury which returned a verdict in favor of plaintiff for $1,-569.18. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Washburn, Bailey & Mitchell,* for appellant.
*Fryberger & Fulton,* for respondent.

HOLT, J.

The action is one for conversion of certain railway ties. Plaintiff had a verdict, and the defendant appeals from an order denying its

motion for judgment notwithstanding the verdict, and also denying its motion for a new trial.

The plaintiff derives his title to the cause of action indirectly from the firm of Ross & Ross, who claim that they bought the ties from one J. W. Chisholm, prior to the time that the defendant purchased the ties from the same person. Therefore the sole question is: Did the title pass from Chisholm, the owner, to Ross & Ross, by the transaction had between these parties prior to the time in April, 1906, when the defendant claims to have bought the ties in good faith from this same Chisholm. It appears that on the line of the Minnesota & International Railway, near a place called Shooks Spur, J. W. Chisholm was in the winter of 1905 and 1906 engaged in taking out ties and piling them on the right of way. He bought the stumpage for a great part of the ties from farmers or owners of nearby timber. Some time in December, 1905, Ross & Ross, who were large dealers in ties, made a verbal arrangement with J. W. Chisholm to cut and deliver ties at the place in question. Some supplies and money were soon after furnished to Chisholm by Ross & Ross. Thereafter this writing was signed:

"Duluth, Minnesota, March 6, 1906.

"J. W. Chisholm,

"Shooks Spur, Minn.

"Dear Sir:

"Confirming verbal agreement made with you relative to your ties which you were to bank on the right of way on the M. & I. Ry., we herewith agree to pay you for same as follows:

"Standard Tamarack Ties 27 cents each.

"Standard Cedar Ties, 31 cents each.

"Specifications to be in accordance with the railway specifications of the railway company to whom we sell the ties.

"Terms of payment to be sixty (60) per cent in cash when ties are inspected and taken up by the railway company.

"Your acceptance to this letter will constitute a contract.

"Ross & Ross,

"by Geo. F. Ross.

"Accepted: J. W. Chisholm."

Below, on the same paper, is this:

"March 8, 1906.

"Received from said Ross & Ross, on 3,300 ties which I have already out at track, $500.00, receipt of which is hereby acknowledged.

"J. W. Chisholm."

Chisholm banked or piled on the right of way of the railway mentioned, near or at Shooks Spur, according to the inspection made by defendant, 2,981 standard tamarack ties and 473 standard cedar ties. Mixed in with these were 232 cull ties. Ross & Ross paid not less than $710, and they claim that they paid all; but the testimony of both Ross and Chisholm leaves the amount paid uncertain. Mr. George F. Ross also claims that he and his men inspected and placed chalk marks on the ties when the above writing was executed. Ross & Ross sold the ties as they were piled to the Pittsburg & Lake Superior Iron Company, and that company, on April 2, 1906, sold the ties to Martin Brothers, through whom plaintiff claims. During the last days of March, 1906, Chisholm claims that he saw an inspector of defendant at Shooks Spur, and this inspector inquired of Chisholm whose ties these were, and whether they "were to be taken up." Chisholm said the ties were his, and that they "were to be taken up." Chisholm does not say that there was any talk between them about selling the ties to defendant, or any one else. Nothing was said about price. Nor does it appear that there was then an inspection, or that Chisholm had any communication or talk with any one representing defendant thereafter, until defendant mailed him its voucher for $997.68, dated April 23, 1906. This voucher Chisholm cashed May 8. A few days after Chisholm's talk with defendant's inspector, the latter evidently inspected the ties. In spring or early summer the defendant took the ties away.

The contention of plaintiff is that under the arrangement between Chisholm and Ross & Ross the title to the standard tamarack and standard cedar ties passed as soon as piled on the right of way. The defendant insists that as a matter of law the title never passed to

Ross & Ross, for the reason that the contract for the sale of the ties above set out was executory, and the conditions as to payment and inspection were not carried out to the point where the title of Chisholm was divested. It is said the contract is in writing, and these matters were to be ascertained and performed before it became executed so as to pass title: It was to be determined what specifications should be applied; the ties inspected thereunder; then the ties that conformed were to be separated from the others in the piles; the ties which were to become the purchaser's must be counted; the money must be paid; and, lastly, it is contended, that the ties were not all cut when it is claimed the title passed to Ross & Ross.

"It is a general rule of law that where a contract is made for the purchase of goods, and nothing is said about payment or delivery, the property passes immediately, so as to cast upon the purchaser all future risk, if nothing further remains to be done to the goods, although he cannot take them away without paying the price." Joyce v. Adams, 8 N. Y. 291, quoted with approval in Martin v. Hurlbut, 9 Minn. 132 (142). Nor is it necessary to cite authorities for the rule that where the contract shows that something must be done to make the property agreed to be sold conform to specifications, or to sort it out or identify it, title does not vest in the purchaser till this be done. But in case of sales, as in other contracts, the intention of the parties to the transaction governs and controls the question of when delivery to the purchaser is made and when the ownership and title passes to him. This runs through all the decisions.

The Chief Justice, in Day v. Gravel, 72 Minn. 159, 75 N. W. 1, says: "In contracts for the sale of goods, the test as to whether the title vests immediately in the buyer is the intention of the parties. The rules for ascertaining such intention are well settled, and are, so far as here material, as follows: (a) Where there is an unconditional contract for the sale of specific goods, in a deliverable state, the property, unless a different intention appears, passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed. (b) Where there is a contract for the sale of specific goods, and the seller is bound to do something to the goods, for the purpose of putting them

into a deliverable state, the property does not pass until such thing be done."

Restad v. Engemoen, 65 Minn. 148, 67 N. W. 1146, Welter v. Hill, 65 Minn. 273, 68 N. W. 26, and Potter v. Holmes, 87 Minn. 477, 92 N. W. 411, also recognize that the intention of the parties to a contract of sale as to vesting title in purchaser controls. Where the intention in this respect may be gathered from a written contract, it becomes a matter of law for the court; otherwise, a question of fact for the jury.

The writing in this case is not such, in our opinion, that therefrom the intention of the parties as to when delivery is made or the title will pass appears as questions of law for the court. The writing is informal, and more of a memorandum of a verbal agreement than a complete contract. It indicates a prior verbal arrangement between the parties, under which Chisholm had cut and banked certain standard ties on the right of way of the Minnesota & International Railway company, for which Ross & Ross were to pay a certain price. Sixty per cent was to be paid in cash when the ties were delivered. It cannot be said, as a matter of law, that the delivery here mentioned was not intended to mean delivery in the piles as then banked by Chisholm on the railway right of way for the purposes of passing dominion and ownership of the ties to the purchaser. No doubt Chisholm meant to cut and bank such ties only as Ross & Ross were to have. No manual delivery of ties was contemplated. The receipt appended to the writing seemed to indicate that Chisholm considered that 3,300 ties then banked or piled on the right of way were delivered under the writing and $500 paid thereon. If the parties had seen fit to state in the writing that the ties or piles of ties were then sold and delivered, it would be conceded, we think, that thereby the title passed, although the same language in regard to specifications, inspection, and payment of the balance of the purchase price was retained as is now found therein.

The situation of the parties prior to the writing, their conduct at the time of the transaction and subsequent thereto, and the condition and kind of property involved, as brought out at the trial, clearly required the submission of the passing of the title and ownership of

the ties from Chisholm to Ross & Ross to the jury, and it is equally clear that the finding for plaintiff on that ground finds abundant support in the evidence. That Ross & Ross considered themselves owners, and did not deem an inspection necessary before they acquired title, appears from the fact that prior to any inspection, save such as George F. Ross made when the writing above mentioned was signed, he had sold the ties and turned them over to another party, who in turn disposed of them to Martin Brothers before the defendant claims to have bought them. And what is the fact as to Chisholm, the other party to the agreement? The written evidence is almost conclusive that he considered the title had passed to Ross & Ross. After Chisholm says he told the defendant's inspector the ties were his, and on April 9, 1906, he signs his name to a letter prepared by his attorneys and addressed to Ross & Ross. Therein he speaks of the ties as being sold to Ross & Ross and requests them to pay $211.50 stumpage, which he admits is unpaid. He also writes therein:

"My attorneys further advise me for you to 'stand pat' and not let anybody have these ties, except some person to whom you have sold them."

He admits that he never saw, heard from, or wrote Ross & Ross after he sent this letter of April 9, and within one month thereafter he accepts a check from the defendant as the purchase price for these same ties which he so recently had acknowledged in writing to be the property of another. So that, although Chisholm now pretends to claim that the sale to Ross & Ross was not consummated because they refused to pay for the ties, his deliberate, written declaration, made at a time when he had no occasion to falsify, is to the contrary.

It is to be noted that Chisholm's work on the ties ceased when they were banked or piled. He testified that he never touched them thereafter. The inspection does not appear to require any moving or handling of the piles. Chisholm had no duty to perform in procuring inspection, nor did he lend any assistance when defendant inspected. The writing does not seem to contemplate either inspection or payment of all the purchase price till after Ross & Ross should part with their title. Both parties were willing that the inspection and count should be made by the one to whom Ross & Ross should sell.

Neither Chisholm nor defendant are in a position to complain of the inspection made, and the assignees of Ross & Ross are willing to abide by it.

We conclude that the informal writing and the evidence in the case under the decisions above cited raised a clear issue of fact as to the intention of the parties with reference to the delivery and passing of title from the seller to the purchasers, Ross & Ross, and that this issue was, by proper instructions, submitted to the jury. Within the decisions of State v. Meehan, 92 Minn. 283, 100 N. W. 6, and Rowley v. Conklin, 89 Minn. 172, 94 N. W. 548, relied on by defendant, the ties, when banked by Chisholm, were in a deliverable state, so that the title might vest if such were the intention of the parties to the sale. The facts in this case are very similar to those in Fredette v. Thomas, 57 Minn. 190, 58 N. W. 984, and what is there said as to the provision of scaling is applicable to the inspection and count in the instant case.

The claim that all the ties were not banked when the writing was made is not supported by evidence of sufficient certainty to merit consideration. Some disconnected statements in the testimony of Chisholm might suggest that such was the case, and that is all, except, perhaps, an inference to be drawn from the fact that some 3,686 were inspected, including 232 culls, whereas, in receipt of March 8, Chisholm stated there were 3,300 ties banked. The same may, with more force, be applied to the contention that Ross & Ross abandoned the contract and refused to accept the ties. At most, they refused to make payments because of claims against the ties. By checks dated early in April, and after this asserted refusal, it is shown that Ross & Ross made payments to laborers who had worked on the ties.

We are also of the opinion that the court committed no error in excluding the offer of defendant to prove that Chisholm wished to pay back to Ross & Ross the money paid on the ties, and that he had kept money on deposit for that purpose. This was conduct of a party after a dispute arose, and is too much in the nature of self-serving declarations to have any probative force. By accepting the money from defendant for the ties, Chisholm, in order to escape the

charge of theft, needs take the position that the title had not vested in Ross & Ross, and therefore he must be willing to return the money received from them.

Defendant, for reasons already stated, was not entitled to an instruction that the verdict must be in its favor if the jury found that there was no inspection. The court refused to give this request of the defendant: "If you find from the evidence that Ross & Ross refused to make any further payments to Mr. Chisholm, and that at that time anything with reference to the ties remained to be done, such as inspection or sorting out, before the title thereto would pass to Ross & Ross, then your verdict must be for the defendant." The request is objectionable for the reason that it implies that the refusal to make the stipulated payments prevented the vesting of title. If nothing remained to be done with reference to the ties by the seller, the title passed if the jury should find such was the intention, regardless of neglect or refusal to make payment. On the other hand, if something remained to be done before the title was to vest in the purchaser according to the intention of the parties, the defendant was entitled to a verdict, whether or not there was a refusal to pay. And of course, if the title passed to Ross & Ross, any failure on their part to make some payment which they had agreed to make would not divest them of their property, and an instruction to the effect that if only part of the price was paid, and Ross & Ross refused to make further payments, the verdict should be for defendant, was properly refused.

While the verdict perhaps approaches the highest value placed on the ties, there is nothing in that fact which indicates such passion or prejudice on the part of the jury that this court has any right to interfere.

The order appealed from must in all things be affirmed.