# E. L. WELCH COMPANY v. LAHART ELEVATOR COMPANY.[1]

## July 18, 1913.

## Nos. 17,852—(40).

**Sale of specific goods — passing of title.**

1. In case of a sale of specific goods, title passes at the time the contract is made, unless some facts are shown that indicate a contrary intention. Neither payment nor delivery are necessary to the passing of title. If no credit is given, the seller then has a lien on the goods for the price.

**Cash sale.**

2. The term "cash sale" is sometimes used to denote a sale where title is not to pass until the price is paid, sometimes to denote a sale where title has passed but possession is not to be delivered until payment is made. In either case, if the seller gives up possssion in expectation of immediate payment, and payment is not forthcoming, he may repossess himself of the goods or sue in conversion one who refuses his demand for repossession.

**Sale of unidentified goods.**

3. Where the sale is of goods not specified at the time the contract is made, the contract is executory, title passes at the time specific goods are appropriated to the contract. To constitute an appropriation, the goods must be identified and applied irrevocably to the contract. No particular words or acts are necessary for this purpose. The intent of the parties controls.

**Payment.**

4. If the parties intend that payment is to be made before title passes, there is no transfer of title until payment is made.

**Presumption.**

5. The presumption is in favor of a cash sale, but facts and circumstances may show a contrary intent.

**Evidence — Findings.**

6. The evidence showed a sale of wheat by plaintiff, a commission merchant, at a fixed price, for future delivery, the subsequent application of certain cars of wheat on track to the contract, an order from plaintiff to the railroad company to deliver these cars at an elevator named for account

---

[1] Reported in 142 N. W. 828.

Note—On the question of the necessity of delivery to pass title, see note in 17 L.R.A. 177.

As to effect of premature delivery to pass title to purchaser, see note in 31 L.R.A. (N.S.) 942.

of the buyer, the rendering of bills to the buyer after his known insolvency, and later, an accounting to the consignor as of a sale made to said buyer. *Held*, to sustain a finding that the title passed and the wheat was delivered on the personal responsibility of the buyer, though the wheat had not yet been weighed to determine the amount due.

**Intent affected by custom.**

7. A custom in such cases to resell grain over and over again before the same is weighed may be considered in arriving at the intent of the parties.

**Bill of lading.**

8. The fact that goods are evidenced by a bill of lading which is retained by the seller is a circumstance tending to show that title had not passed. But where the bill of lading covers other cars, and where bills of lading in the same form are not usually delivered to buyers, these facts tend to rebut any inference raised by retention of the bill of lading.

**Weighing goods to ascertain price.**

9. The fact that goods are still to be weighed by the seller, in order to ascertain the price, raises a presumption that title has not passed. Requirement of weighing for that purpose by a third person has less force as a presumption.

**Delivery.**

10. A delivery, apparently unrestricted and unconditional, of goods sold for cash, is presumptive evidence of the waiver of the condition that payment should be made on delivery to vest title in the purchaser.

**Stoppage in transit.**

11. When goods are delivered into the actual possession of the buyer, or one standing in his shoes, the right of stoppage in transit is gone.

After the former appeal reported in 109 Minn. 219, 123 N. W. 821, the case was tried before Steele, J., who made findings and ordered judgment in favor of defendant. Plaintiff's motion to amend the findings of fact was denied. From an order denying plaintiff's motion for a new trial, it appealed. Affirmed.

*Harris Richardson* and *Walter Richardson,* for appellant.
*William A. Lancaster* and *Milton D. Purdy,* for respondent.

HALLAM, J.

This is an action in conversion to recover the value of 5,334 bushels of wheat. The case has been tried twice. On the first trial, before a jury, the court directed a verdict in favor of defendant, on the ground that the evidence conclusively showed that defendant was the owner of the wheat. On appeal this order was reversed on the ground

that the question of ownership was one of fact to be determined by the jury. 109 Minn. 219, 123 N. W. 821. The second trial was before the court without a jury. The court found as a fact that defendant was the owner of the wheat. From an order denying a motion for a new trial, plaintiff appeals.

The wheat was originally shipped to plaintiff, as commission merchant, by the Mapes Farmers' Elevator Company of North Dakota. Defendant claims plaintiff sold and passed title to the wheat to one Mohler, and that Mohler sold and passed title to defendant. The real question is whether title ever passed from plaintiff to Mohler. The facts are as follows:

On February 6, 1907, plaintiff agreed on the floor of the Minneapolis Chamber of Commerce to sell Mohler 5,000 bushels of No. 1 Northern wheat at 83¾ cents a bushel, to arrive in Minneapolis at any time before June 1, 1907. It was understood, in accordance with the usual custom in such cases, that the wheat was to be inspected and graded by the state grain inspector and weighed by the stated weighmaster. The sale was made on account of the Mapes Farmers' Elevator Company, and on the same day the plaintiff notified said company of said transaction.

On April 13, 1907, Mohler sold to defendant, on the floor of the Chamber of Commerce, 10,000 bushels of wheat, to arrive.

On April 17, 1907, two cars of wheat were shipped by the Mapes Farmers' Elevator Company consigned to plaintiff in Minneapolis. On April 19, 1907, two more cars were shipped by the same party in the same manner. The cars were inspected and graded by the state grain inspector April 22 and 23, and notices covering said cars were forthwith sent by plaintiff to Mohler, each in form as follows: "We apply on sale to you to-day of

| Car No. | Grade | Article | Price |
|---------|-------|---------|-------|
| ———     | 101   | Wh      | 83¾   |

L. Sale 2/6 S. M.

"Please check, and if not correct, notify at once."

These notices meant that the cars were applied on the sale made February 6, 1907, and the letter "L" meant that the wheat was to go to defendant's elevator L. In each case plaintiff also issued written instructions to the railroad company as follows: "Please deliver the

following cars as ordered below  *  *  *  destination Elev. L. *  *  *  for account of W. B. Mohler."

Mohler at once applied these cars on his sale to defendant, and in writing confirmed delivery to defendant. Thereafter, these cars were all switched to defendant's elevator and upon the private track of defendant. On Sunday, May 12, 1907, the first of these cars was so switched and the grain was unloaded into defendant's scales, and on that day weighed by the deputy state weighmaster. The official record of weight was ready for inspection Monday morning, May 13. Neither plaintiff nor Mohler knew the weight until then. Early in the morning of Monday, May 13, the other three cars were switched to defendant's elevator and upon defendant's private tracks. They were unloaded and weighed on that day and the weight was made public on the morning of May 14.

In the meantime Mohler became financially embarrassed, and, on May 13, was unable to meet his obligations. Plaintiff learned of Mohler's financial troubles on the morning of May 13. On the morning of May 13, plaintiff rendered Mohler a statement covering the first car, unloaded on the twelfth, showing the car number, grade, gross weight, dockage, net weight, price and total amount due. On the fourteenth, and after Mohler's condition was well known to plaintiff, it rendered Mohler a statement in similar form, covering the remaining three cars, and also charging him with an over delivery of 334 bushels, being the amount that the contents of the four cars exceeded the 5,000 bushels contracted for. This excess was charged at the current price of $1.01¼. On the next day, May 15, plaintiff rendered to Mapes Farmers' Elevator Company an account of sales corresponding to the statements to Mohler, showing the amounts realized on sale to him and deducting therefrom commissions and other charges. Plaintiff soon thereafter remitted to Mapes Farmers' Elevator Company on that basis. Mohler never paid plaintiff for the wheat. Defendant never paid Mohler, but claimed that Mohler was indebted to defendant in an amount exceeding the value of the wheat.

In case of each shipment from Mapes Farmers' Elevator Company to plaintiff, a bill of lading was issued covering the cars in question and one other car, and running to "E. L. Welch & Co." Neither

bill of lading was made "to order." Plaintiff retained these bills of lading. There is evidence that when a bill of lading was not made "to order" it was not customary for the consignee to turn it over on sale by him of the wheat.

There is also evidence that it was customary among dealers on the chamber of commerce, where a car of wheat has been applied by a seller on a sale in the manner above mentioned, for the purchaser to apply the same on sales made by him and so on for several successive transactions, all while cars are on track and before final delivery of the wheat at any elevator for unloading and weighing, and in such case subsequent purchasers settle with those from whom they have bought without reference to settlement on previous sales and without production of receipts or vouchers from prior sellers.

Sometime on Monday, May 13, plaintiff notified defendant not to unload these cars. The court found that this notice was given between 11: 30 a. m. and 2 p. m. The court also found that the cars were all unloaded before 11:30 a. m. on that day. The unloading was doubtless hastened by defendant on account of Mohler's known financial embarrassment.

The court found that the foregoing transactions operated to transfer to Mohler the title and the possession of all of said wheat; that plaintiff did not intend to retain any dominion or control over it, but did intend to convey and transfer both the title and right of absolute and unconditional possession.

1. The principles of law applicable to this case are for the most part well settled. In case of sale of specific goods, that is, goods that are specified at the time the contract is made, the title passes at the time the parties intend that it shall pass. The presumption is that it passes at the time the contract is made, and it will pass at that time, unless some facts are shown that indicate a contrary intention. This is true although neither payment nor delivery are then made. Fishback v. G. W. Van Dusen & Co. 33 Minn. 111, 22 N. W. 244; Rail v. Little Falls Lumber Co. 47 Minn. 422, 50 N. W. 471; Day v. Gravel, 72 Minn. 159, 75 N. W. 1. But if neither payment nor delivery are made at the time of the contract, the seller, unless he gives credit, still has a lien on the goods for the price, until he receives payment, or makes delivery without it.

2. Of course payment may, by agreement, be made a condition to the passing of title. The term "cash sale," as applied to a sale of specific goods, is sometimes used to denote a sale where title is not to pass until the cash price is paid, and sometimes to denote a sale where title has passed but possession is not to be delivered until payment is made. Tiffany, Sales, 123, 268. In either case payment and delivery are concurrent and mutually dependent acts, and if the seller gives up possession in expectation of immediate payment, and payment is not forthcoming, he may repossess himself of the goods or sue in conversion one who refuses his demand for repossession. Fishback v. G. W. Van Dusen & Co. supra; Freeman v. Kraemer, 63 Minn. 242, 246, 65 N. W. 455; Carter, Rice & Co. v. Cream of Wheat Co. 73 Minn. 315, 76 N. W. 55.

3. This was not a sale of specific goods. It was a sale of goods not specified at the time the contract was made. The rules as to sale of specified goods do not fully apply, but they must be borne in mind, for the executory contract is converted into· a complete bargain and sale by specifying the goods to which the contract is to attach, or, in legal phrase, by the *appropriation* of specific goods to the contract. The sole element deficient in a perfect sale is thus supplied. The contract has been made in two successive stages, instead of being completed at one time; but it is none the less one contract, namely, a bargain and sale of goods. Benjamin, Sales (7th Am. ed.) § 358; Benjamin, Sales (5th Eng. ed.) 341. In such case the title passes at the time the goods are "appropriated" to the contract. Fishback v. G. W. Van Dusen & Co. supra; Jones v. Schneider, 22 Minn. 279; that is, when the parties do something which signifies an intention that the title shall pass. To constitute an appropriation, the goods must be identified and they must be applied irrevocably to the contract. It is not always easy to determine, in a given case, whether they have been so applied. No particular words or acts are required. The intent of the parties governs.

4. There may be an appropriation without either payment or delivery, but, if the parties manifest an intention that payment is to be made before title passes, such intention controls and there is no transfer of title until payment is made. If this sale was a cash sale, either in the sense that title was not to pass until the price was paid,

or in the sense that, though the title passed, payment was to be made on delivery, and if then delivery was made in contemplation of contemporaneous payment, plaintiff could not be divested of its right to the wheat without payment, and it is entitled to recover in this action.

5. The presumption is in favor of a cash sale. Fishback v. G. W. Van Dusen & Co. supra; Globe Milling Co. v. Minneapolis Ele. Co. 44 Minn. 153, 46 N. W. 306. But facts and circumstances may show an intent to deliver on credit of the buyer. Defendant contends that this was what plaintiff did; that plaintiff intended to give to Mohler both the title and right of possession and to rely wholly on his personal responsibility. The trial court found, in effect, that plaintiff did do this.

6. We are of the opinion that the determination of the trial court is sustained by the evidence. Defendant's haste in unloading these cars after knowledge of Mohler's insolvency was of no avail to it. The rights of the parties are to be determined by what occurred prior to this. We are of the opinion that the written notice to Mohler applying these cars on the sale previously made, the written order to the railroad company to "deliver" these cars to Elevator L. "for account of W. B. Mohler," and their delivery there, the rendering of bills therefor to Mohler after his known insolvency, and still later rendering an account to the Mapes Farmers' Elevator Company of a sale made to Mohler, tend to prove a delivery to Mohler and to further prove that plaintiff intended to make the delivery absolute, to "assume the risk of parting with his title and possession," and to rely entirely on the responsibility of Mohler. Together, these circumstances are sufficient to sustain the finding of the trial court.

7. The custom on the chamber of commerce to resell grain in such cases over and over again before the same is weighed or paid for, lends color to this view. Of course, if by the contract the sale was plainly for cash, usage could not make it a sale on credit. Globe Milling Co. v. Minneapolis Ele. Co. supra. Custom will not be allowed to vary or contradict the plain expressed terms of a contract, or to imply from these terms an obligation different from what the law would imply, or to imply an obligation in the absence of any contract on the subject. Paine v. Smith, 33 Minn. 495, 24 N. W. 305.

But usage may be admissible to explain what is doubtful. Certain business customs and usages may become so well established and understood that men, in making their contracts, assume them and take them for granted, and contract with reference to them. Paine v. Smith, supra; Merchant v. Howell, 53 Minn. 295, 55 N. W. 131. Accordingly, the custom of this business was proper to be considered in determining what the parties intended by their transaction.

8. Plaintiff urges that the fact that the bill of lading was not delivered negatives the idea of an unconditional delivery of the wheat. It is true that where goods are evidenced by a bill of lading, the retention of the bill of lading by the vendor is a circumstance going to show that title was not intended to pass, because it is some evidence of retention of the control and right of disposal of the goods. But in this case the bill of lading ran to the consignee and not to its order. There is evidence that, where a bill of lading was issued on wheat shipments in this form, it was not the custom to deliver it upon a sale of the wheat. It further appears that each bill of lading in this case covered cars other than those applied to Mohler. In the nature of things it could not be delivered to the purchaser of every car.

9. It is contended by plaintiff that the fact that the goods were still to be weighed, in order to ascertain the price, indicated that title had not passed. The authorities are not in harmony as to the effect of a requirement of this kind. When weighing is necessary to identify the goods, the intention that title shall not pass until this is done is a necessary inference. Burdick, Sales, § 94. Where the weighing is to be done solely for the purpose of ascertaining the price, the reason for presuming such an intention is less strong, but authorities generally sustain the rule that there is in such case a presumption that title will not pass. Burdick, Sales, § 95; Williston, Sales, §§ 268, 269; Martin v. Hurlbut, 9 Minn. 132 (142); Restad v. Engemoen, 65 Minn. 148, 67 N. W. 1146; Day v. Gravel, 72 Minn. 159, 75 N. W. 1. If the goods are to be weighed by the vendee, it is held in some cases that a presumption arises that title is not to pass until this is done. Williston, Sales, § 269, though there is much authority to the contrary. Cunningham v. Ashbrook, 20 Mo. 554; Sedgwick v. Cottingham, 54 Iowa, 512, 6 N. W. 738, as also

in the case where the goods are to be weighed, measured or counted by a third person. Leonard v. Davis, 1 Black (66 U. S.) 476, 483, 17 L. ed. 222.

10. If the weighing is not to be done before delivery and the seller in fact delivers the goods to the buyer, the mere fact that the quantity is not known does not prevent the title from passing. Scott v. Wells, 6 Watts & S. (Penn.) 357, 40 Am. Dec. 568; Burrows v. Whitaker, 71 N. Y. 291, 27 Am. Rep. 42; Riddle v. Varnum, 20 Pick. (Mass.) 280; Welch v. Spies, 103 Iowa, 389, 72 N. W. 548; Wadhams v. Balfour, 32 Ore. 313, 51 Pac. 642. In such case the rule applies that "a delivery, *apparently* unrestricted and unconditional, of goods sold for cash, is presumptive evidence of the waiver of the condition that payment should be made on delivery in order to vest the title in the purchaser." Fishback v. G. W. Van Dusen & Co. 33 Minn. 111, 117, 22 N. W. 244, 245; Upton v. Sturbridge, 111 Mass. 446.

But these rules are in every case merely rules of presumption. Williston, Sales, § 269. The language may be such as to indicate that the parties intended that the title should pass when delivered, even though by the contract the vendor is bound to weigh or measure the goods.

In Gardner v. Northern Pac. Ry. Co. 118 Minn. 275, 136 N. W. 1028, it was held that the fact that railway ties were to be inspected and counted after delivery, and that 60 per cent was to be paid in cash when the ties were inspected, did not prevent the passing of title before inspection and payment.

In Fredette v. Thomas, 57 Minn. 190, 58 N. W. 984, a sale of saw logs provided for delivery on a railroad right of way, scale to be made there by the surveyor general of logs for that district, price to be fixed by such scale. These provisions were held not inconsistent with a verdict that title passed. See also Morrow v. Reed, 30 Wis. 81.

It is clear that the fact that this wheat was not weighed at the time of its transfer to Mohler's account, did not, as a matter of law, prevent the title and right of possession from passing. It was merely one circumstance to be considered along with others in determining the intent of the parties.

11. Plaintiff contends that if it is held that, if the title passed from plaintiff, there was still a right of stoppage in transit. We need not discuss the right of stoppage in transit further than to say that the right is clearly gone, if the goods are not stopped in transit before actual delivery to the vendee, or someone who has stepped into his shoes. In this case the court found that plaintiff notified defendant to stop unloading at some time between 11:30 a. m. and 3 p. m. on May 13, but further found that the wheat was wholly unloaded before 11:30 a. m. There is evidence sufficient to sustain these findings. The transit had accordingly ended before this notice was given and the right of stoppage was gone. 26 Am. & Eng. Enc. (2d ed.) 1091.

Order affirmed.