THOMAS L. JONES and Another v. MINNESOTA & MANITOBA RAILROAD
COMPANY.[1]

February 2, 1906.

Nos. 14,547—(129).

**Replevin—Questions for Jury.**

Action in replevin to recover the value of certain railway ties claimed
to have been converted by appellant. A contract between R., a representa-
tive of M., M. & Co., appellant's contractors for constructing a railroad,
and O., provided that O. should sell and deliver to R., for M., M. & Co.,
four months from date, seventy five thousand railroad ties at a certain
price and of certain character, to be delivered on the right of way, as re-
quired, with the right to purchase and reject any ties not complying with
certain specifications, price to be paid when the ties were inspected on
the right of way. The evidence was conflicting as to whether the ties
were cut and delivered under the terms of the original contract, or an ex-
tension thereof, or under a new verbal contract, subsequent to the expira-
tion of the original. The evidence was also conflicting as to whether the
ties were piled and delivered by O. upon the right of way, as provided
by the contract, and whether by piling them in such manner O. intended
to part with dominion over them. There was also conflict in the evidence
as to whether R. had waived inspection of the ties, and whether they
had been fully paid for and accepted by him, or whether title still remained
in O. at the time he executed a chattel mortgage upon the property. *Held,*
the trial court submitted these several questions to the jury by proper
instructions, and the finding of the jury is sustained by the evidence.

**Foreclosure of Chattel Mortgage.**

It appeared from the evidence that the value of the ties was about
three times the amount of the mortgage debt, and that at the foreclosure
sale the mortgagee purchased the property, assumed possession, and there-
upon executed a bill of sale to respondents, and the question arose at the
trial, whether or not, conceding the mortgage to have been valid, M., M.
& Co. acquired title to the ties, or any part thereof, subsequent to the
execution of the mortgage. This question was submitted to the jury for
their determination by appropriate instructions, and the evidence war-
rants the conclusion reached by the jury. The grantee of the mortgagee,
in possession after an invalid chattel mortgage foreclosure sale, may
recover the full value of the property, even in excess of his debt, in an

[1] Reported in 106 N. W. 1048.

action against a stranger who shows no right to the property. *Held*, the evidence justifies a finding that M., M. & Co. did not acquire any title to the property subsequent to the execution of the chattel mortgage, and hence were strangers to the title at the time of the conversion.

### Notice—Burden of Proof.

It was conclusively shown at the trial that the ties in question were taken by the representatives of M., M. & Co. while they were engaged in building the railroad as contractors of appellant; that the rails were spiked to the ties and the road was used by them in prosecuting the work, and in accordance with the terms of their contract was turned over to and received by appellant. Upon this state of facts it is unnecessary to determine whether the construction contract entered into between appellant and the contractors, M., M. & Co., constituted the latter independent contractors, or whether they were merely the agents and employees of appellant. For the purpose of this case it is assumed that they were independent contractors and that the relation of respondeat superior did not exist. But when, upon the trial, it was established as a fact that the ties in question had been converted by M., M. & Co. and used in the construction of the railroad, which was turned over to and received by appellant as in full compliance with the contract, the presumption arose, considering the nature of the contract and the evidence in the case, that appellant had notice of respondents' claim, and it was then incumbent upon appellant to establish, by satisfactory evidence, that it had no knowledge or sufficient notice to put it upon inquiry of the fact that the ties in question had been so converted and used in the construction of the road. *Held*, further, that, appellant having submitted no evidence at the trial to overcome the presumption that it received the road with knowledge of respondents' claim, the instruction by the trial court to the effect that M., M. & Co. were the representatives of appellant was without prejudice, and, further, the instruction to the effect that respondents were entitled to recover if the jury should find that R. or M., M. & Co. had not acquired title to the ties was justified by the evidence.

Action in replevin in the district court for Hennepin county to recover from defendant possession of seventeen thousand five hundred railroad ties or $5,250 the value thereof in case possession could not be had. The case was tried before Holt, J., and a jury, which rendered a verdict in favor of plaintiff for $4,918.35. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed after a reargument had on the following questions: (1) Did appellant in good faith without notice of respond-

ent's claim of ownership accept and use the ties after they were placed in the railroad by MacKenzie, Mann & Company? (2) If appellant did accept the ties in good faith, was it necessary to make demand upon appellant before commencing this action, and to allege the same in the complaint? (3) If demand was necessary, was it waived by appellant by its answer or at the trial?

*Keith, Evans, Thompson & Fairchild* and *Hector Baxter,* for appellant.

*Steenerson & Loring, W. E. Dodge* and *John Lind & A. Ueland,* for respondents.

LEWIS, J.

Action in replevin to recover possession of seventeen thousand five hundred railroad ties, alleged to have been taken from respondents while located on certain land in Roseau county. The complaint alleged that appellant was a railroad corporation duly organized under the laws of this state, and was the owner of a railroad right of way, beginning at the international boundary line, section 26, township 164, range 37, in Roseau county, and extending across the county southeasterly to the Rainy river, upon which it built and constructed a railroad track; that during the months of September and October, 1900, appellant company, by and through its agents, servants, and employees, wrongfully took and carried away from respondents' possession the cross-ties, and now detains the same, which are alleged to be of the value of $5,250.

The answer admitted that appellant was a railroad corporation, as alleged, and that it was the owner of the railroad right of way described in the complaint, but expressly denied that it was the owner of the right of way, or any part thereof, at the time of the alleged conversion of the railroad ties. Appellant also admitted that there was built and constructed upon the right of way a railroad track, and that the same had been leased to another railroad, which operated it, but expressly denied that appellant built or constructed the track, or any part thereof, or that it maintains such track. The trial resulted in a verdict for respondents in the sum of $4,918.35.

It was admitted at the trial that the railroad ties in question were taken by MacKenzie, Mann & Co., the contractors, and used in such

construction.  Respondents maintain that they were the owners of the ties at the time of such taking and that the parties who took them were the agents, servants, and employees of appellant company.  The ties were cut by a man named Oaks, during the winter of 1899, under a contract with Rogers, who represented MacKenzie, Mann & Co., and were rafted to a point on the Warroad river, by the employees of Oaks, during July and August, 1899, and piled upon a government homestead, and while located there Oaks executed a mortgage on them, to a merchant, Sjoberg.  One of the most important questions at the trial was whether Oaks was the owner of the ties at the time he executed the mortgage, which depended upon whether he had delivered them to Rogers pursuant to the terms of their contract.  If it was established by satisfactory evidence that Oaks had not delivered the ties to Rogers, and that respondents succeeded to the interest of the mortgagee, then the further question arises whether or not appellant company can be held liable for the acts of MacKenzie, Mann & Co. in taking the ties.

1.  The Oaks-Rogers contract was dated January 24, 1899, and provided that Oaks should sell and deliver to the purchaser, Rogers, for MacKenzie, Mann & Co., four months from date, seventy five thousand railroad ties at the price of twenty two cents, at least seventy five per cent. to be tamarack and cedar, the balance jack and red pine, to be delivered on the right of way as required, starting on the international boundary line, through townships 36, 34, 33, 32, and 31, and to Rainy river, with the right to the purchaser to reject any not complying with the above requirements.  Price to be paid when the ties were inspected on the right of way.

There was strong conflict in the evidence as to whether the ties were delivered to Rogers and whether title had passed at the time of the execution of the mortgage, September 18.  The following are the main facts bearing on the question:  After the four months mentioned in the Oaks-Rogers contract had expired, Oaks continued to cut and haul other ties, and it is not very clear whether the three piles in dispute in this action were all cut prior to or after the expiration of the four months; but it makes no particular difference, for it is quite evident that either the written contract was extended, or an oral contract em-

bodying the same features was entered into, and that all of the ties were cut and delivered upon the terms mentioned in the writing, except as to the time.

There was also a very marked disagreement in the evidence as to the total number of ties which Oaks furnished under his contract. Rogers claimed that he had overpaid Oaks, and that there was a continuous shortage in the number of ties delivered, and that he had never in fact delivered the total number of seventy five thousand; whereas there was evidence on behalf of respondents which indicated that the total number of ties furnished was over one hundred thousand, and there was evidence tending to show that Rogers admitted that at least eighty seven thousand ties had been furnished. Rogers also claimed that at the time the ties in suit were delivered Oaks had practically thrown up his contract, and that he (Rogers) had furnished the money necessary to keep Oaks' subcontractors running and had assumed control of the rafting and delivery. Oaks maintained that Rogers owed him at least $9,000, and that all Rogers did was to advance money from time to time.

Another question bearing upon the case is the fact that, at the time these particular ties were piled on the bank of the Warroad river, the right of way had not been definitely located in that vicinity, although a blazed line had been run through. Oaks admitted that when he piled the ties he supposed that they would be near enough to the proposed right of way so that it would not be necessary thereafter to move them, but that he had no intention of abandoning possession. It turned out, however, that the right of way was not located in that particular vicinity, but was at a considerable distance away, so that in fact the ties were not placed on the right of way. At no time prior to the execution of the mortgage did Rogers, or any of his representatives, take possession of the ties, either actually or by notifying Oaks that he claimed the same, nor was any inspection made. The court submitted the question to the jury for them to determine whether or not, under the circumstances, there had been a delivery, and clearly under the evidence it was a question of fact.

Appellant relies upon the case of Fredette v. Thomas, 57 Minn. 190, 58 N. W. 984, as authority for its position that it was entitled to an in-

struction to the effect that the title had actually passed to Rogers. In that case the logs were actually delivered at the point named, and it was held that upon such delivery the title passed; that the other provisions in the contract as to the scaling of the logs by the surveyor general, in order to determine the quantity of lumber and the amount of the purchase price, were matters to be performed after delivery, and upon which delivery did not depend.

There was a dispute in this case as to whether the ties had been piled on the government homestead with the intention of then and there turning them over to Rogers. Some authorities hold that, where inspection is provided for after delivery at the place designated, title does not actually pass until after inspection and acceptance; but it is not necessary to review that line of cases and apply the rule to the facts here presented. The court requested the jury to determine whether inspection had been waived, and we are bound to assume the jury found that Rogers had not waived his right to inspect. If title is to be determined by the mere act of piling the ties on the supposed right of way, without reference to inspection and acceptance, the evidence was conflicting, and whether there was a delivery, was a question of fact. But, if we assume that delivery was not complete until inspection took place, the evidence is sufficient to sustain the finding of the jury that no inspection took place and that the right to do so was not waived. The court fully and fairly submitted these questions to the jury, and upon either theory appellant is bound by the result.

2. It is conceded that the mortgage executed to Sjoberg was valid, provided Oaks had title to the ties; but it was not legally foreclosed. and the question arises whether respondents, who purchased the property by a bill of sale from Sjoberg, acquired such an interest and title that would enable them to recover for the full value of the ties. It is admitted that the property was in value at least three times the amount of the mortgage debt. The foreclosure sale took place February 26, 1900, and the purchaser at the sale (Sjoberg) assumed possession, and on March 26 thereafter executed and delivered to respondents a bill of sale. Whatever rights the mortgagee acquired at the foreclosure sale he transferred to respondents by the bill of sale, and if at the time of the execution of the mortgage Oaks was the owner of the

property, and between that date and September 30, when the ties were converted, MacKenzie, Mann & Co., or their representative, Rogers, did not acquire any title from Oaks, then at the time of the conversion they were strangers to the title, and were liable to respondents for the full value of the property. Adamson v. Petersen, 35 Minn. 529, 29 N. W. 321, approved in Strickland v. Minnesota Type-Foundry Co., 77 Minn. 210, 79 N. W. 674.

The court submitted to the jury for their determination the question whether MacKenzie, Mann & Co., subsequent to the execution of the mortgage, had acquired title from Oaks, and instructed them that, if they should find such title had been acquired, then respondents could only recover in this action to the amount of the mortgage lien, with interest. The evidence was conflicting upon this point. No change had taken place in the location of the ties or in the control thereof, so far as Rogers was concerned. Respondents claim to have been in possession of the ties under the bill of sale. The conduct of Oaks during the period was consistent with the claim of title by mortgagee and respondents' title under the bill of sale, and we have discovered no evidence indicating an intention on his part to transfer to Rogers, or MacKenzie, Mann & Co., any interest in excess of the mortgage lien. Under these circumstances the question was properly submitted to the jury, and we find no error in that respect.

3. Whether appellant is liable for the acts of MacKenzie, Mann & Co., in taking the ties depends, in the first instance, upon the relation assumed by the contractors as evidenced by their contract and the conduct of the parties. If MacKenzie, Mann & Co. were not independent contractors, but merely employees or agents of appellants, then, of course, the act of the immediate builders of the road in converting the ties was the act of appellant. But if MacKenzie, Mann & Co. were independent contractors, and their act not chargeable to the railroad company by virtue of their relation, then we are met with a further question, which will be stated later. The contract is substantially as follows:

> This indenture, made this second day of May, one thousand eight hundred and ninety-nine, between * * * MacKenzie, Mann & Co., hereinafter called the contractors, of the first

part, and the Minnesota & Manitoba Railroad Company, a corporation existing under the laws of the state of Minnesota, hereinafter called the company, of the second part.

The instrument then recites that the company was incorporated under the laws of the state of Minnesota, with power to construct the line of railway thereinafter mentioned, and that the company would become entitled to $8,000 per mile in bonds of the province of Manitoba, and that the company had been unable to raise money for prosecuting the undertaking, and constructing and equipping the railway, and accordingly employed the contractors for that purpose; that the contractors furnish the necessary right of way and station grounds, and that they construct and build the company's railway from the point on the international boundary between the state of Minnesota and the province of Manitoba, connecting with the Manitoba & Southeastern Railway to a point on the westerly bank of the Rainy river, near its mouth, and to connect with the bridge across the same and with the railway of the Ontario & Rainy River Railway Co., a distance of about forty five miles, to be completed on or before July 1, 1901, with the necessary right of way, stations, station grounds, water tanks, bridges, culverts, ties, rails, fastenings, and superstructure generally, telegraph, rolling stock, tools, and furniture, fully and finally completed and finished in a workmanlike manner, and to conform with the laws and requirements of the state of Minnesota, and also to the satisfaction of the government of Manitoba, and so as to entitle the company to receive the benefit of the aid given by the Manitoba government by guarantying the bonds of the company or exchanging the bonds of the company for bonds of the government of Manitoba; that the contractors furnish the necessary engineering and labor for surveys and the location of the line, including the making of maps and plans necessary, and to defray all preliminary expenses incidental to procuring the company's charter and the organization of the company; that the contractors become responsible for all damages sustained by any person or persons whomsoever in respect to any injury to persons, lands, buildings, etc., occasioned by them or their workmen in performing the works contracted for. The company covenanted that upon the completion of the railroad it would pay to the contractors, as part consideration, $1,000,000 in fully paid-up or-

dinary stock of the company, and to issue it to the contractors, or to whom they might appoint; that the company execute its bonds to the extent of $8,000 per mile, to be secured by a first mortgage upon the railroad, and to deliver the same to the contractors, or to whom they might appoint, in order that the same may be exchanged for Manitoba government bonds for like amount, the bonds to be the property of the contractors as part of the consideration they were to receive for constructing the railroad; that the contractors shall not execute or perform any work in the nature of extras, and shall not make any claim or demand or bring any action or suit against the company in respect of any matter or thing in the nature of extras, unless a contract has been duly entered into and executed with the company in respect thereto.

Such were the provisions of the contract, and it was executed and signed by the contractors, MacKenzie, Mann & Co., per William Mac-Kenzie, attorney, and on the part of the railroad company by the president and secretary. The contract was received in evidence, and it is claimed on behalf of respondents that it shows upon its face, especially when taken in consideration with the testimony of the president of the company, that MacKenzie, Mann & Co., were not independent contractors of appellant. The president's testimony was to the effect that in response to the request of William MacKenzie he visited Washington and secured the passage of an act of Congress granting the right of way through the Red Lake Indian Reservation; that in all the matters of organizing the company and entering into the contract he was acting at the request of MacKenzie, and that the board of directors consisted of himself and three other persons, residents of Minneapolis, who acted in organizing the company at the request of the president. One share of stock was issued to each of the directors, and paid for by their services, but none of them ever paid any money. The company was capitalized at $1,000,000, and all the stock that was ever issued was turned over to the contractors. The court instructed the jury that under the contract whatever was done by the direction of MacKenzie, Mann & Co. was done by the appellant railroad company, and that, if Mac-Kenzie, Mann & Co. took the ties, then appellant was liable.

The rule of respondeat superior has been several times declared in this court. In Rait v. New England F. & C. Co., 66 Minn. 76, 68 N.

W. 729, it was held that the question depended upon whether one party had the right to control, in the given particular, the conduct of the person doing the wrong. In Aldritt v. Gillette-Herzog Mnfg. Co., 85 Minn. 206, 88 N. W. 741, the controversy being between an original and subsequent contractor, it was said that the doctrine depended upon whether the original contractor had control of and the right to direct the subcontractor as to time, place, and manner of performing the work, to be determined from the contract between the parties in the light of surrounding circumstances. Again, in Klages v. Gillette-Herzog Mnfg. Co., 86 Minn. 458, 90 N. W. 1116, it was held that although the written contract might prima facie determine the true relations between the parties, yet if it appeared that the contract was not executed in good faith, or that notwithstanding the contract the supervision and control of the work was assumed by the contractor, then the application of the rule should be determined by the conduct of the parties.

There are many things in connection with the contract involved in this case which strongly indicate that the railroad company was incorporated merely to carry out the purpose of MacKenzie, Mann & Co., and that the incorporators loaned their names for that purpose. It does not appear that any stock was subscribed for, or any money paid in, by any of the organizers or directors, and each director held one share of the stock. However that may be, the corporation was recognized as a legal entity, and by act of congress a right of way through government lands was conferred upon it. Respondents have treated the company as a valid corporation by bringing this action against it to enforce the liability, and we shall assume that appellant was a legally organized corporation, with authority to enter into a contract for the construction and equipment of the railroad.

Some of the provisions in the agreement indicate that there was an intention on the part of the railway company to retain supervision of and direct the movements of the contractors. The most forcible of these suggestions is the fact that MacKenzie, Mann & Co. undertook to furnish everything, to locate the line of the road, making the necessary surveys and plats, construct the station houses and telegraph lines, and all without specifications and plans defining definitely the location of the route, the character of the railroad to be built, and the nature of the

97 M.—16

equipments and property to be used.   Upon its face this would indicate
a purpose on the part of appellant to follow up the contractors as the
work progressed and supervise and control the same.   The contract
does, however, provide that the railway shall connect at the north with
the Manitoba & Southeastern Railway, and that the southerly termi-
nus shall connect with the Ontario & Rainy River Railway, which im-
plies that the road is to be built of the same general character as the
connecting roads.   And there is another provision that the road shall
be constructed to the satisfaction of the Manitoba government, in order
that it may earn an issue of bonds to be issued by that government.
And, when the contract is considered with reference to the method of
organizing the company, the inference is strong that it was the inten-
tion of the railroad company not to retain any control whatever over
the contractors in carrying out the agreement, but rather to transfer
to them the entire matter without reservation, simply agreeing that
upon completion of the road it would, in consideration thereof, deliver
its capital stock in full payment.

Having reached the conclusion that the case must be affirmed on other
grounds, we shall concede, without deciding, that the relation of re-
spondeat superior was not made out; in other words, that MacKenzie,
Mann & Co. were independent contractors.   With this concession, was
it error without prejudice to charge the jury that the acts of MacKen-
zie, Mann & Co. were the acts of appellant?   And was it error to in-
struct the jury that respondents were entitled to recover if title to the
ties did not pass from Oaks to Rogers?

The record shows that the ties were placed in the roadbed and spiked
to the rails, and that the road was temporarily used by the contractors
for a considerable time before it was completed and turned over to ap-
pellant under the contract.   It follows that, at the time the roadbed
came into possession of appellant and it assumed dominion over it, the
ties had become attached to the realty and could no longer be classified
as personal property.   Upon this state of affairs, an action in conversion
would not lie against appellant, unless at the time it took possession of
the road it had knowledge which upon inquiry would reasonably lead
to notice of the fact that the ties had been taken and placed in the road-
bed.   There is no evidence in the record to justify holding as a matter

of law that respondents knew MacKenzie, Mann & Co. were independent contractors and that they were using the road simply as such; but respondents were justified in assuming that the parties who took possession of the ties and put them in the roadbed were representatives and employees of appellant.

At the trial, for what reason does not appear, appellant submitted its case upon the theory that, if MacKenzie, Mann & Co. were independent contractors, that fact relieved appellant from liability, under the ruling in Detroit v. Busch, 43 Mich. 571, 6 N. W. 90; the ties having become attached to the realty. In that case it was held that the owner could not recover against the railroad company, for the reason that he had notice that the ties were taken by the original trespasser and used for a considerable time in the construction of the road before it was finally turned over, and that by sleeping upon his rights and permitting the ties to become changed from personal to real property he was without remedy against the railroad company. In this case an equitable action had been begun against respondents by MacKenzie, Mann & Co. in the federal court to have the title to the ties adjudicated, which action was afterwards dismissed upon jurisdictional grounds, and there is nothing in the record to indicate that respondents had been guilty of laches in not proceeding against MacKenzie, Mann & Co. before the completed road was turned over by them to appellant. The question, then, is: Did appellant make out a complete defense by resting upon the assumption that MacKenzie, Mann & Co. were independent contractors?

While, as before stated, we have not deemed it necessary in this case to decide whether or not the rule of respondeat superior applied in reference to the point now under consideration, we think the contract and the relation of the parties as established by the evidence has a decided bearing. There is no evidence to indicate that the officers of the railway company were not fully informed from time to time as to the construction of the road, of the method pursued by the contractors in securing the ties for the road, and of the litigation in the federal court over the ownership of the ties. It can hardly be presumed that so important a matter, which apparently had the effect of greatly delaying the construction of the road, was not within the knowledge of the offi-

cers of appellant company. It having been fully established that appellant received the ties and has had the benefit of them, it was incumbent upon it to prove, not only that it was not originally chargeable with the act of the contractors in taking the ties, but also that in taking over the completed road it was without notice of respondents' claim. No steps were taken in this respect, and the court was justified in instructing the jury to return a verdict for respondents in case they found that Rogers acquired no title from Oaks.

Order affirmed.